## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2017, 6:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Evan K. Hammond
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rodrick Osborn Sheron,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 9, 2017<br><br>Court of Appeals Case No.<br>27A05-1606-CR-1244<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Dana J. Kenworthy, Judge<br><br>Trial Court Cause No.<br>27D02-1506-F1-3 |

**Altice, Judge.**

### Case Summary

[1] Rodrick Osborn Sheron challenges the sufficiency of the evidence in support of his conviction for robbery resulting in serious bodily injury, a Level 2 felony.

[2] We affirm.

### Facts & Procedural History

[3] Sheron and Megan Poling began dating in late 2014. In March 2015, Megan received a tax refund. Megan used some of the money to make purchases, deposited some of the money into her bank account, and retained some cash in her wallet. At some point thereafter, she noticed that money was missing from her wallet. Because Sheron had been acting strangely, Megan suspected that he might have taken it. She checked Sheron's wallet and found the money that had been taken from her wallet. An altercation between Sheron and Megan ensued, police were called, and the money was confiscated as part of the investigation of the incident.

[4] On the night of May 28, 2015, Gordon Jenkins gave Megan a ride home from work. Jenkins did not want to drive all the way home, so he stayed the night at Megan's. They were asleep in the same bed when both were awakened by Sheron hitting Megan in the face. Megan was screaming and yelling for help, but Sheron continued with the attack, repeatedly punching her in the face and head while yelling "where's my money, you owe me money and you're going to get my money today." *Transcript* at 37. He also threatened to kill Megan if she did not cooperate. Jenkins could not summon help for Megan because Sheron took both of their phones.

Sheron then picked Megan up and threw her across the room into her dresser and her nose started bleeding. The attack continued as Sheron pulled Megan out into the hallway and smashed her into a wall causing a hole in the drywall. Eventually, Sheron chased Megan into the bathroom and continued to hit her. He then told her that she needed to have sex with an unidentified individual in order to get him the money he claimed she owed him.

Sheron left Megan in the bathroom and went to her room to gather some clothes. While Sheron was in her room, Megan ran from the house and across the street to a neighbor's house. Sheron chased after her. As Sheron ran out of the house, he dropped Jenkins's cell phone on the ground. Jenkins used his phone to call the police. When police arrived at the neighbor's house, they encountered Megan when she opened the front door. Sheron fled out a back door. Thereafter Megan was taken to the hospital. As a result of the beating, Megan suffered a broken nose and fractures to her cheek bones. Her face was red and swollen and she received sixteen stitches on her nose. The treating physician described her injuries as "fairly severe" and Megan testified that she was in a lot of pain. *Id*. at 246.

Megan's father returned to her home to gather her things, at which time it was discovered that money Megan kept in a pouch in her bedroom, her keys, and her cell phone were missing. The pouch that had contained the money had been moved from Megan's bedroom and was found near the front door. The money, the keys, and Megan's phone were never recovered. Sheron was

eventually arrested. Despite a no-contact order, Sheron called Megan numerous times from jail to tell her he loved her.

[8] On May 28, 2015, the State charged Sheron with Count I, burglary, as a Level 1 felony; Count II, robbery resulting in serious bodily injury, a Level 2 felony; Count III, battery resulting in serious bodily injury, a Level 5 felony; and Counts IV through IX, invasion of privacy, each a Level 6 felony. A jury trial commenced on April 12, 2016. The jury found Sheron guilty of the lesser-included offense of residential entry, a Level 6 felony, for Count I, and guilty as charged for Counts II through IX. On May 9, 2016, the trial court sentenced Sheron to 2.5 years on Count I; 30 years on Count II; 6 years on Count III; and 2.5 years on each of Counts IV through IX. The trial court ordered Counts I through III be served concurrent with each other and Counts IV through IX be served concurrent with each other. The trial court ordered that Counts I through III be served consecutive to Counts IV through IX, for a total aggregate sentence of 32.5 years executed. On appeal, Sheron challenges only his conviction on Count II. Additional facts will be provided as necessary.

## Discussion & Decision

[9] In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id*. If there is substantial evidence of probative value from which a reasonable trier

of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

[10] To sustain Sheron's conviction for robbery resulting in serious bodily injury, the State was required to prove beyond a reasonable doubt that on or about May 28, 2015, (1) Sheron (2) knowingly (3) took property ("to wit: cash, a mobile telephone and/or keys") (4) from Megan (5) by using or threatening the use of force, (6) resulting in serious bodily injury to Megan. *Appellant's Appendix* at 25; *see also* Ind. Code § 35-42-5-1(1). Our Supreme Court has reasoned that "[w]ithout the taking of property, and no evidence from which to draw an inference that property was taken, there can be no conviction for robbery." *Grace v. State*, 731 N.E.2d 442, 445 (Ind. 2000).

[11] On appeal, Sheron challenges only whether the evidence is sufficient to establish that he took property from Megan.[1] Specifically, Sheron argues that there is no evidence that he took or was ever in possession of the money from the pouch Megan kept in her room, her keys, or her phone. We disagree.

[12] Megan testified that Sheron took her phone. This was sufficient standing alone to establish a taking of property. As to the money and truck keys, the jury could have inferred that when Sheron was alone in Megan's bedroom, he took the pouch containing the money and Megan's truck keys as these items were on

---

[1] Sheron does not dispute the evidence regarding the physical altercation or Megan's injuries.

or near the bed in plain view in Megan's room. Megan testified that the money was in the pouch, in her room when she went to bed and that following the attack, the money was missing. The pouch that had contained the money had been moved from Megan's bedroom and was found near the front door. In sum, there was direct evidence that Sheron took Megan's phone. There was also evidence from which a reasonable inference could be drawn that Sheron took Megan's keys and/or money from her home. Sheron's arguments to the contrary are simply requests that we reweigh the evidence or judge the credibility of witnesses, which we will not oblige.

[13] Judgment affirmed.

[14] Riley, J. and Crone, J., concur.